IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| KATIE GUTHERLESS,<br><br>    Plaintiff,<br><br>  vs.<br><br>UNION PACIFIC RAILROAD COMPANY, a Delaware Corporation;<br><br>    Defendant. | 8:20CV442<br><br><br>**MEMORANDUM AND ORDER** |

  Plaintiff Katie Gutherless ("Plaintiff") has moved for an order compelling Defendant Union Pacific Railroad Company ("UP") to produce video footage of the scene of the subject accident, captured from both railcar and stand-alone cameras at the Bailey Yard in North Platte, Nebraska. (Filing No. 37).

BACKGROUND

  On June 16, 2019, Plaintiff was injured while working for UP and "manually maneuvering a coupling mechanism on a railcar" when a "separate set of railcars was shoved onto the tracks and into the railcars upon which she was working." (Filing No. 37 at CM/ECF p. 2). Her hand was crushed and amputated as a result of the collision. (Filing No. 37 at CM/ECF p. 2). This lawsuit resulted.

  UP served initial disclosures on Plaintiff on January 8, 2021. (Filing No. 39-3). In its disclosures, UP indicates that relevant video footage exists but is being "withheld until the filing of a properly tailored Protective Order[.]" (Filing No. 39-3 at CM/ECF p. 6). Plaintiff objected to UP's refusal to produce the document and through "the remainder of January and early February the parties held several

phone conversations and emails regarding the video evidence in which Plaintiff informed Defendant that it did not believe a protective order was necessary[.]" (Filing No. 37 at CM/ECF p. 2). After additional negotiation, Plaintiff was "willing to agree to a limited protective order." (Filing No. 37 at CM/ECF pp. 2-3). However, Plaintiff and UP were unable to come to an agreement on the protective order's scope.

In accordance with the local rules and this court's case management practices, the parties contacted the court to set a discovery dispute conference prior to formal motion practice on this issue. That conference was held on April 26, 2021, before the undersigned magistrate judge. No resolution was reached during the call, and the court set a deadline and briefing schedule for litigation of this dispute on a formal motion. (Filing No. 36) (text order).

Plaintiff timely filed her discovery motion, which is now fully submitted. Being fully advised, the court will enter a protective order as follows.

ANALYSIS

I.   Procedural Posture

The court will briefly address Plaintiff's contention that UP has waived its right to seek a protective order in this case. Plaintiff argues that UP should have been the moving party if it wished to obtain a protective order and that UP should be disallowed from seeking a protective order in response to Plaintiff's motion to compel. (Filing No. 37 at CM/ECF p. 4) ("any argument from Defendant that it should now be entitled, as a response to Plaintiff's motion, be allowed to move the court for a protective order should be rejected as untimely, made in bad faith, and against the interests of justice"). The court is not persuaded by this argument.

The parties engaged in protracted discussions related to the scope of any protective order, with proposals and revisions proffered by counsel for both parties. (Filing No. 39-5, 39-6, and 39-7). After a breakdown in those discussions, the parties contacted the court and participated the required discovery dispute conference prior to any formal motion practice.

During that conference, the court was expressly advised that the dispute between the parties was the scope of any necessary protective order. The court directed Plaintiff to file a motion to compel, with Defendant proffering a response. (Filing No. 36) ("After conferring with counsel, Plaintiff's anticipated motion to compel shall be filed on or before May 3, 2021; Defendant's response shall be filed on or before May 14, 2021; and Plaintiff's reply, if any, shall be filed on or before May 19, 2021.") (text order). Perhaps the court could have directed Defendant to file a motion for protective order with Plaintiff filing a response. However, based on the series of events leading up to the instant motion, and the relief requested, there would have been no substantive difference. And given the back and forth between the parties, and what appears to the court to have been good faith efforts to resolve this issue without judicial involvement, the court declines to find that UP acted in bad faith or was improperly dilatory in seeking this relief. As noted above, the court has broad discretion when fashioning protective orders and it is well within the authority of the court to enter such an order in these circumstances.

II. Merits

This case implicates an interesting, threshold question: How broadly may a party use the information it obtains in civil discovery? Many jurisdictions have addressed that question, finding that dissemination of pretrial discovery materials by the receiving party "is not prohibited absent a protective order." DaCosta v. City

of Danbury, 298 F.R.D. 37, 39 (D.Conn.2014); see also Kent v. The New York State Pub. Emps. Fed'n, AFL-CIO, 2019 WL 457544, at *1 (N.D.N.Y. Feb. 5, 2019) ("[i]n the absence of such a protective order, 'parties to a law suit [sic] may disseminate materials obtained during discovery as they see fit"); Calhoun v. City of Chicago, 273 F.R.D. 421, 422 (N.D. Ill. 2011) ("Unless prohibited by a protective order, a party can disseminate materials obtained in discovery.") (citation omitted).

However, while the rules themselves do not limit a party's use of the materials it obtains in discovery, such dissemination "for non-judicial purposes is unusual and rightly so." DaCosta, 298 F.R.D. at 39. The discovery process exists "for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984); see also United States v. Smith, 985 F. Supp. 2d 506, 521 (S.D.N.Y. 2013) ("these rules are meant to foster the use of compulsory process to facilitate orderly preparation for trial, not to educate or titillate the public").

> [V]irtually all [members of the public] have an interest in ensuring that everyone in our society ha[s] access to a fair and impartial judicial system without having to pay too high a price of admission in the form of the surrender of personal privacy. Thus, courts must be vigilant to ensure that their processes are not used improperly for purposes unrelated to their role.

Springs v. Ally Fin., Inc., 2014 WL 7778947, at *5 (W.D.N.C. Dec. 2, 2014), aff'd, 2015 WL 506471 (W.D.N.C. Feb. 6, 2015), order vacated in part on other grounds, 657 F. App'x 148 (4th Cir. 2016) (citation omitted).

On the instant motion, Plaintiff argues that no protective order is necessary but agrees "to enter a protective order that restricts Plaintiff from putting the videos

on to the internet or using them in any advertisement."[1] (Filing No. 37 at CM/ECF p. 5). UP agrees that restriction to dissemination in advertising and on the internet is necessary. UP wants the following additional terms included in any protective order entered by the court: (1) that the parties and their agents will not distribute the items to anyone outside their offices except for consultants or testifying experts they have retained; (2) that, at the conclusion of this litigation, all copies be reclaimed and either destroyed or returned to UP; and (3) that the subject items cannot be used in future litigation.(Filing No. 41 at CM/ECF p. 5).

Plaintiff would not agree to those additional terms. Thus, the central dispute in this case is related to the scope of use Plaintiff may make of discovered materials.

Under Rule 26(c), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense ...[.]" Fed. R. Civ. P. 26(c). The moving party bears the burden to demonstrate good cause for the issuance of the protective order. Prism Techs. LLC v. AT&T Mobility, LLC, 2014 WL 3670949, at *1 (D. Neb. July 23, 2014) (citations omitted). For good cause to exist, "the parties seeking protection must show that specific prejudice or harm will result if no protective order is granted." Vishay Dale Electrs., Inc. v. Cyntec Co., Ltd., 2008 WL 4372765, *3 (D. Neb. Sept. 22, 2008) (citation omitted). "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." Seattle Times Co., 467 U.S. at 36.

---

[1] [1] The court does not devote any of its analysis to the relevancy of this information. That the videos are relevant to the instant lawsuit is undisputed. The court agrees and affirmatively finds that the discovery at issue is relevant within the meaning of Rule 26.

UP argues that the videos in question "capture train traffic as it moves through the yard" and that UP "does not make its yard camera footage publicly available and treats them as confidential[.]" (Filing No. 41 CM/ECF p. 3). UP asserts that it has a security interest in keeping the field-of-view of its camera footage confidential because "nefarious actors" could use that information to interfere in UP operations. For example, UP argues, the yard cameras are in fixed locations and their field-of-view is not routinely altered. (Filing No. 41 at CM/ECF p. 4). Therefore, a bad actor could review footage from UP's yard cameras and determine where there exist "blind spots" in UP's footage of its railyard and utilize that information to harm UP. (Filing No. 41 at CM/ECF p. 4). UP additionally argues that footage of its yard operations should be kept confidential because public dissemination of UP operational footage could be used by "competitors to identify [UP's] switching methods." (Filing No. 41 at CM/ECF p. 4).[2]

UP has identified specific concerns – both for security purposes and its business interests – to demonstrate a specific risk of harm should this information be disclosed outside the confines of this lawsuit. UP has sufficiently demonstrated a good cause basis for entering the protective order it requests.

The court must also consider "the relative hardship to the non-moving party should the protective order be granted." General Dynamics Corp. v. Selb Mfg. Co., 481 F.2d 1204, 1212 (8th Cir.1973) (citing United States v. Kordel, 397 U.S. 1, 4–5 (1970)). "The balance of relative hardships includes an assessment of any substantial detriment to a party caused by the inclusion or failure to include the

---

[2] When considering pending motions, a court may take judicial notice of its filings. Those filings substantiate UP's concerns regarding the potential harm of disseminating video evidence depicting the layout and operations within its yard facilities. See, e.g., USA v. Love, 8:21-cr-00054-BCB-SMB (D. Neb. 2021). This court's criminal filings also substantiate the railroad's concern with dissemination of video recordings depicting how a moving train is operated, how onboard personnel respond to emergencies, and how nefarious actors could hijack and potentially derail a train, thereby causing substantial harm to the train crew, passengers, property, and depending on its cargo and the location of the derailment, perhaps whole communities. See, e.g., USA v. Wilson, 4:18-cr-03005-JMG-CRZ (D. Neb. 2018).

protection at issue." Blair v. City of Omaha, 2011 WL 148120, at *2 (D. Neb. Jan. 18, 2011) (citation omitted). Protective orders are intended to "expedite the flow of discovery material, facilitate the prompt resolution of disputes over confidentiality, adequately protect confidential material, and ensure that protection is afforded only to material so entitled...[.]" United States ex rel. Brown v. Celgene Corp., 2016 WL 6542729, at *3 (C.D. Cal. Mar. 14, 2016) (citation omitted).

The court cannot identify any prejudice or "substantial detriment" to Plaintiff if the court enters UP's proposed protective order. That order would afford Plaintiff full access to the videos, and it does not hamper in any way his use of that information to prove his case. Plaintiff's counsel may believe he will be prejudiced by being unable to more widely use the videos. But the question presented before me is whether the plaintiff in this lawsuit, not his Plaintiff's counsel and his future clients, will be prejudiced.[3] Aside from concern that he may be sanctioned if he disobeys the protective order, Plaintiff has not explained any prejudice he will experience if UP's requested protective order is entered.

Plaintiff (or Plaintiff's counsel) appears to seek access to the disputed video evidence for a purpose broader than this litigation. While that is not inherently improper under the rules, it is contrary to spirit and purpose of the discovery process. On balance, the good cause demonstrated by UP outweighs the prejudice, if any, to the plaintiff herein if UP's requested protective order is entered. Given the principles and the analysis above, the court will compel production of the videos in question subject to the protective order terms proposed by UP.

---

[3] Plaintiff's counsel argues in its reply that: "Plaintiff should not be subjected, as defendant suggests, to relitigate the retrieval of the relevant evidence at issue in all other matters it has with Defendant." (Filing No. 43 at CM/ECF p. 4). There is no argument or evidence indicating that Plaintiff Gutherless has any other litigation with this or any other railroad defendant. The concern outlined in the briefing, then, appears to be Plaintiff's counsel being "subjected" to relitigation of this issue. Plaintiff's counsel's concern regarding his representation of clients in future litigation is not Plaintiff's concern in this case.

Accordingly, IT IS ORDERED:

1) Plaintiff's motion to compel (Filing No. 37) is granted in part and denied in part. On or before July 1, 2021, UP is hereby compelled to produce the disputed video footage under the following terms:

   a. The video from any locomotive camera concerning the subject accident shall not be disclosed, produced, or otherwise disseminated to anyone who is not involved in this case by Plaintiff, as well as any agents or representatives of the Plaintiff.

   b. The Plaintiff, as well as any agents or representatives of the Plaintiff, shall not allow the subject items to be disseminated on the Internet or any other electronic media, and no party shall use these items in advertisements.

   c. The Plaintiff, as well as any agents or representatives of the Plaintiff, will ensure that if the subject items are given to any employee of theirs or any outside expert, that these individuals will be advised of and provided a copy of this Protective Order and they shall not disseminate the subject items on or to the Internet or any other outside electronic media nor shall they disclose, produce, or otherwise disseminate it to anyone who is not involved in this case.

   d. Any employee of or outside expert utilized by the Plaintiff, as well as any agents or representatives of the Plaintiff, who accepts access to the subject items or copies of the same shall be bound by the usage restrictions outlined in this Protective Order. Plaintiff shall, prior to granting third-party access to the subject items, provide such recipients with a copy of this Protective Order, and require that any recipient affirmatively agree, in writing, to be bound by its terms.

   e. The items may not be used for any purpose other than in connection with the preparation for, and trial of, this litigation.

   f. That the termination of proceedings in this action shall not relieve any person to whom the items have been disclosed from the obligations of this Protective Order, and said items will be destroyed/deleted or returned to UP at the conclusion of this case.

Dated this 10th day of June, 2021.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge